THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ERNEST ANEKE**                                                                                   **PLAINTIFF**

**v.**                                   **Case No. 4:20-cv-00270-KGB**

**DAVISON DESIGN & DEVELOPMENT, INC.**                              **DEFENDANT**

**ORDER**

Before the Court is the motion to dismiss and compel arbitration filed by defendant Davison Design & Development, Inc. ("Davison"), on August 4, 2020 (Dkt. No. 6). Also pending before the Court are a motion for order filed by plaintiff Ernest Aneke and a motion for continuance filed by Davison (Dkt. Nos. 21, 23). For the reasons set forth herein, the Court grants Davison's motion to dismiss and compel arbitration and stays this action pending the conclusion of the arbitration proceedings.[1] The Court denies as moot Mr. Aneke's motion for order and Davison's motion for continuance (Dkt. Nos. 21, 23).

**I.     Factual And Procedural History**

On March 13, 2020, plaintiff Ernest Aneke, proceeding *pro se*, filed a motion for leave to proceed *in forma pauperis* ("IFP") and a complaint against Davison,[2] alleging a single claim for breach of contract (Dkt. Nos. 1, 2). In his complaint, Mr. Aneke claims that he contracted with Davison to assist him with the development of his invention, a security light with an alarm system, but that a competing project is now on the market (Dkt. No. 2, at 4). Mr. Aneke further claims

---

[1] Although styled as a "motion to dismiss and compel arbitration," Davison requests that the Court stay this action pending the conclusion of the arbitration proceedings, rather than dismiss the action (Dkt. No. 6, ¶ 10).

[2] In his complaint, Mr. Aneke incorrectly named "Davison Design & Development, Inc.," as "Davison Inventionland."

that, under the terms of his contract with Davison, he is not allowed to contact any other company for assistance in developing his invention (*Id.*). Mr. Aneke seeks monetary damages against Davison in the amount of $500,000,000 (*Id.*). Mr. Aneke filed an addendum to his complaint on March 20, 2020 (Dkt. No. 3).

On July 8, 2020, the Court granted Mr. Aneke leave to proceed IFP, screened his complaint, and found that service was appropriate (Dkt. No. 4). On August 4, 2020, Davison filed a motion to dismiss and compel arbitration, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Mr. Aneke entered into a valid arbitration agreement with Davison that covers the parties' dispute (Dkt. No. 6).

In support of its motion to dismiss and compel arbitration, Davison alleges that, on July 18, 2016, Mr. Aneke and Davison executed an agreement (the "Agreement"), which contained an arbitration clause (*Id.*, ¶ 2). A copy of the Agreement is attached to Davison's motion to dismiss and compel arbitration (Dkt. No. 6-1) and included as part of Mr. Aneke's addendum to his complaint (Dkt. No. 3, at 6–9). The Agreement provides, as relevant here, that:

> This Agreement shall be governed by the law of the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any dispute not resolved through good faith negotiation, the parties agree that all disputes shall be resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(Dkt. Nos. 3, at 7; 6-1, at 2). The Agreement was signed by both Mr. Aneke and a representative of Davison (Dkt. Nos. 3, at 9; 6-1, at 4).

Davison asserts that, based on the above provision of the Agreement, the parties have "agreed that all disputes arising under the Agreement shall be resolved through arbitration." (Dkt.

No. 6, ¶ 3). Davison claims that "Mr. Aneke filed a complaint against Davison for claims arising under the Agreement, notwithstanding the parties' unambiguous consent to submit claims of this type to arbitration." (*Id.*, ¶ 4). Contending that "Mr. Aneke's complaint falls within the scope of the Agreement's arbitration provision," Davison maintains that "[t]he Court should enforce the parties' Agreement and compel Mr. Aneke to arbitrate his claims," and that "[t]he Court should stay this litigation pending resolution of this dispute in arbitration." (*Id.*, ¶¶ 8, 9, 10).

Mr. Aneke filed a response in opposition to the motion to dismiss and compel arbitration on August 10, 2020 (Dkt. No. 9), to which Davison replied on August 28, 2020 (Dkt. No. 14). In his response brief, Mr. Aneke alleges that Davison "expos[ed]" his project to other companies and refused to meet with him to discuss why a company beat him to the market with the same idea (Dkt. No. 9, at 1). Mr. Aneke insists that Davison's motion to dismiss and compel arbitration should be denied because this "has become a case of stealing" and the parties have "moved pass[ed]" the Agreement (*Id.*). On August 19, 2020, Mr. Aneke submitted to the Court an e-mail, dated May 3, 2017, from Ellen Gallucci, Assistant to the Director of Licensing for Davison, to Mr. Aneke, discussing efforts by the company's licensing department to market his invention (Dkt. No. 11).

Davison then filed a reply and an amended reply in support of its motion (Dkt. Nos. 14. 19). In its reply, Davison cites additional legal authorities and describes the nature and timeline of several communications between Mr. Aneke and Davison (Dkt. No. 19, at 4-5). Mr. Aneke filed several notices with the Court that include, as attachments, electronic mail messages and documents (Dkt. Nos. 15, 20). In his first notice, Mr. Aneke seems to request that the Court make inquiries on his behalf of Davison (Dkt. No. 15 ("Therefore I am pleading with the court to ask Davison design and development. . . .")). Mr. Aneke also describes his interactions with

employees and individuals from Davison and makes additional allegations about Davison's purported treatment of him as this dispute has progressed (Dkt. No. 20 ("I have suffered intimidation and racial profiling by some of the davison designed and development employees.")).

Mr. Aneke then filed a motion for order (Dkt. No. 21), to which Davison responded (Dkt. No. 22). Mr. Aneke requested that the Court conduct on his behalf the Federal Rule of Civil Procedure 26(f) conference, as Mr. Aneke represents that he could not retain an attorney for reasons he explains (Dkt. No. 21). Davison then filed a motion to continue (Dkt. No. 23).

These motions are ripe for review and, for the reasons stated herein, the Court grants Davison's motion to dismiss and compel arbitration (Dkt. No. 6).

**II.     Governing Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies in this case. The FAA provides, as relevant here, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has described this provision as reflecting both "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In line with these principles, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

"[T]hreshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To that end, the Court's task is to determine: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). While "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. 1, 24–25 (1983), the party seeking to compel arbitration carries the burden to prove a valid and enforceable agreement, *see Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

Finally, because Mr. Aneke relies on matters outside the pleadings when responding to Davison's motion, the Court will review the motion to dismiss and compel arbitration under the standards for summary judgment, rather than Federal Rule of Civil Procedure Rule 12(b)(6).  *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita,* 475 U.S. at 586, 587).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  *See Anderson*, 477 U.S. at 255.

### III.     Discussion

The Court finds that the FAA applies in this case, that there is a valid and enforceable agreement to arbitrate between the parties, and that the dispute in question falls within the scope of that agreement.  Therefore, the Court will compel the parties to arbitrate their dispute.

*First*, the FAA applies in this case.  The FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court has construed the language of the FAA broadly to encompass all contracts involving interstate commerce, "even if the parties did not contemplate an interstate commerce connection."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (quoting *Allied-Bruce Terminix Cos.*, 513 U.S. at 273, 274)).

Here, Mr. Aneke pleads that he is a citizen of Arkansas and that Davison is incorporated under the laws of and has its principal place of business in Pennsylvania (Dkt. No. 2, at 3).  Matt Olszewski, Director of New Products for Davison, sent written and electronic communications, each with an address in Pittsburgh, Pennsylvania, to Mr. Aneke in Little Rock, Arkansas (Dkt. No. 3, at 2–3, 11–17, 20–22).  Finally, Mr. Aneke made a series of payments to Davison for research and development expenses related to his invention (Dkt. No. 3, at 2–3).  Accordingly, the FAA applies in this case, and Mr. Aneke does not argue otherwise.

*Second*, the arbitration clause in the Agreement is valid and enforceable.  Under Arkansas law, "the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations."

7

*Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 586 S.W.3d 624, 629–30 (Ark. 2019), *cert. denied sub nom. Robinson Nursing Ctr. v. Phillips*, No. 19-1154, 2020 WL 3492670 (U.S. June 29, 2020) (citing *Reg'l Care of Jacksonville, LLC v. Henry*, 444 S.W.3d 356, 360 (Ark. 2014)). As the proponent of the arbitration agreement, Davison has the burden of proving these essential elements. *See Country Club Gardens, LLC v. Alexander*, 599 S.W.3d 363, 366 (Ark. Ct. App. 2020) (citing *Phillips*, 586 S.W.3d at 630).

Having carefully reviewed the Agreement, the Court finds that Davison has met its burden of establishing all essential contractual elements. The Court is not persuaded by Mr. Aneke's insistence that the parties "have moved pass[ed] the [A]greement." (Dkt. No. 9, at 1). The Agreement specifies that "[e]ither the Client or Davison may revoke by written notice this Agreement within seven (7) business days from the day the Agreement was signed by both," and that "[t]he revocation provision of this Agreement is the only means of cancelling this Agreement and obtaining a refund." (Dkt. Nos. 3, at 8; 6-1, at 3). There is no evidence before the Court that Mr. Aneke provided Davison with the required written notice of revocation within seven business days of executing the Agreement on July 18, 2016.

On September 21, 2017, Davison notified Mr. Aneke that "the previous company decided to pass on the product," but that it had another company in mind to approach with his idea (Dkt. No. 9, at 3). Davison instructed Mr. Aneke to choose between a reactive and proactive approach within 30 days and explained that the failure to do so would be deemed a selection of the reactive option (Dkt. No. 9, at 2–3). The letter concluded by stating that "[t]he three business day period during which you may cancel this contract for any reason by mailing or delivering written notice to the invention developer will expire on the third day after you sign this Agreement." (Dkt. No. 9, at 2). There is no evidence before the Court that Mr. Aneke attempted to cancel the Agreement

and obtain a refund within the prescribed time period. Thus, it would appear that the Agreement remained in force when Mr. Aneke commenced this litigation. There is a valid, enforceable agreement to arbitrate, and the Court will now consider whether the parties' controversy falls within the scope of that agreement to arbitrate.

*Third*, Mr. Aneke's claims against Davison fall within the scope of the arbitration clause. Under the Agreement, Mr. Aneke and Davison "agree[d] that all disputes shall be resolved through arbitration before the American Arbitration Association ('AAA') in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA." (Dkt. Nos. 3, at 7; 6-1, at 2). In his complaint, Mr. Aneke alleges that Davison beached the Agreement by allowing a competing invention to make it to the market before his and that, as a result, Davison owes him $500,000,000 in royalties (Dkt. No. 2, at 4). The Court determines that the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.

Mr. Aneke's argument to the contrary is unconvincing. Mr. Aneke disputes Davison's characterization of his claims as sounding in contract, maintaining that this "has become a case of stealing." (Dkt. No. 9, at 1). The Court agrees with Davison that Mr. Aneke has not plead a cause of action for fraud, conversion, or the like. Instead, in his complaint, Mr. Aneke claims only that he "hired Davison . . . to help bring [his] idea to life *through a contract*" and that a competing project is now on the market (Dkt. No. 2, at 4 (emphasis added)).

"Generally, a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguished from an affirmatively wrongful act (misfeasance)." *L.L. Cole & Son, Inc. v. Hickman*, 665 S.W.2d 278, 281 (Ark. 1984) (citing *Morrow v. First Nat'l Bank of Hot Springs*, 550 S.W.2d 429 (Ark. 1977)). Additionally, "where on the facts either an action in contract or one in tort is possible, the plaintiff must make a choice." *Id.* (citation omitted). It is

apparent that Mr. Aneke has sued Davison in contract, rather than tort. To the extent that Mr. Aneke now attempts to state additional causes of action beyond breach of contract, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation and internal quotation marks omitted).

However, even if the Court were to find that Mr. Aneke has properly pled causes of action against Davison for fraud and conversion or other claims, he would still be required to submit those claims to binding arbitration. The arbitration clause covers "all disputes" not settled through good-faith negotiation (Dkt. Nos. 3, at 7; 6-1, at 2); there is no exception for claims that sound in tort or are based on allegations of fraud and conversion or other allegations. As the Eighth Circuit Court of Appeals has explained, "[a]rbitration may be compelled under a broad arbitration clause as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (alteration, citation, and internal quotation marks omitted). "It generally does not matter that claims sound in tort, rather than contract." *Id.* (citing *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499–500 (8th Cir. 2007)); *see also CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005) ("Broadly worded arbitration clauses . . . are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement."). Accordingly, the Court will enforce the arbitration agreement as written.

Finally, the Court will stay, rather than dismiss, this action pending the conclusion of the arbitration proceedings. *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had . . .

." (emphasis added)). The Court acknowledges that, although "[t]he FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it," district courts may rely upon a judicially created exception to this rule and, in their discretion, "dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011). However, because a demand for arbitration does not toll the statute of limitations, *see Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 889 (8th Cir. 2015), the Court will "exercise its discretion to stay this case to preserve a forum for redress in the event that the arbitration fails to resolve the claims." *Steadfast Ins. Co. v. Frost Bank*, No. SA-17-CV-1222-XR, 2018 WL 3865415, at *2 (W.D. Tex. Aug. 14, 2018).

### IV. Conclusion

For the foregoing reasons, the Court grants Davison's motion to dismiss and compel arbitration (Dkt. No. 6). The claims asserted by Mr. Aneke are stayed pending the conclusion of the arbitration proceedings. The parties are ordered to proceed to arbitrate this dispute in accordance with the terms of the Agreement and consistent with the terms of this Order. Finally, the parties are ordered to file a status report, either jointly or separately, with the Court within 14 days of receiving the arbitration decision. The Court denies as moot Mr. Aneke's motion for order and Davison's motion for continuance (Dkt. Nos. 21, 23).

It is so ordered this 24th day of February, 2021.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge